GEORGE U. HIND, INDIVIDUALLY AND AS A FORMER MEMBER OF, AND ON BEHALF OF THE PARTNERSHIP OF HIND, ROLPH & COMPANY, NOW DISSOLVED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19167.    Promulgated June 15, 1932.

*George E. H. Goodner, Esq.*, for the petitioner.
*John D. Foley, Esq.*, and *Lloyd W. Creason, Esq.*, for the respondent.

OPINION.

SMITH: The only question to be determined is whether the partnership of Hind, Rolph & Company is entitled to have its profits tax for the calendar year 1917 computed under the provisions of section 209 of the Revenue Act of 1917. This section of the act reads as follows:

That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per

centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction.

Under the Revenue Act of 1917, the partnership is considered, for purposes of computing income and profits taxes, as an entity. Its invested capital is to be determined as in the case of a corporation. Section 207 of that act provides in part:

That as used in this title, the term "invested capital" for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

As used in this title "invested capital" does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title nor money or other property borrowed, and means, subject to the above limitations:

(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year  *  *  *.

We do not think that the evidence before us warrants a finding that the partnership had no invested capital or not more than a nominal capital in 1917.

The respondent was unable to determine the partnership's invested capital for 1917 and therefore computed its liability to profits tax under the provisions of section 210 of the Revenue Act of 1917. The petitioner contends that it had no invested capital and that it is entitled to assessment under the provisions of section 209 of the taxing act. The burden is on the petitioner to prove that the partnership had no invested capital in 1917.

The evidence shows that the partnership began operations in 1898 with a paid-in capital of $5,000. Its operations from that date to 1917 were admittedly profitable. Large amounts were invested in capital assets. The witness, Chamberlain, testified that the partnership owned a number of ships which it carried on its books at December 31, 1916, at an aggregate sum of approximately $200,000 and a hotel which it carried on its books at $143,651.22. The balance sheet as of December 31, 1916, filed with the partnership return for 1917 lists total assets of $1,167,294, among which are bills receivable of $146,093.19, amounts due from principals of $224,416.59, real estate of $252,860.96, and stock investments of $537,982.78. The stock investments item includes ships referred to at a value of $235,410.88 and miscellaneous stocks at $302,571.90. Chamberlain, who identified and explained all of the book accounts referred to above, upon

being asked how he arrived at the conclusion that the partnership had no invested capital, stated as follows:

I have a knowledge of certain conditions of assets which were simply picked out of the air. In other words, they would increase the valuation of an asset and credit their profit and loss or their drawing account in order to take care of withdrawals of capital. In addition to that they held as assets a number of accounts which should have been written off in prior years.

The witness was unable to furnish his computation of invested capital.

Petitioner contends that the capital assets on its books of account at December 31, 1916, had been written up to the extent of more than $300,000, which the petitioner contends should apply against the net capital as shown by the partnership books at December 31, 1916, of $114,054.96, leaving a deficit or minus invested capital of more than $200,000. In the making of this computation the total capital account, as shown by the books at December 31, 1916, of $221,953.31, is reduced by the amounts of the Rolph drawing account, $31,953.32, and the Rolph insurance account, $75,945.03, leaving a partnership net worth, as shown by the books, of $114,054.96.

In *LaBelle Iron Works* v. *United States*, 256 U. S. 377, the Supreme Court stated:

* * * Section 207 [Revenue Act of 1917] shows that Congress was fully alive to this and designedly adopted a term—" invested capital "—and a definition of it, that would measurably guard against inflated valuations. The word " invested " in itself imports a restrictive qualification. When speaking of the capital of a business corporation or partnership, such as the act deals with, " to invest " imports a laying out of money, or money's worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains. * * *

The evidence clearly shows that the partnership on December 31, 1916, had large amounts of capital invested in assets from which income was derived in 1917. In the circumstances of the case, we are of the opinion that the amounts which had been advanced to the partners by the partnership did not represent distributions of earnings or distributions to the partners of the original paid-in capital of the partnership which was carried on the partnership books at December 31, 1916, in substantial amount. The partners were liable to the partnership creditors for the amounts that they had drawn from the partnership. We think the evidence does not show that the partnership had no invested capital in 1917.

If it is true that substantially all of the partnership income in 1917 was due to its commission and brokerage business, in which not more than a nominal capital was used, it is not shown by the evi-

dence. The petitioner, Hind, testified that most of the partnership business was " foreign business." Was the merchandise transported to and from foreign countries in the vessels which the partnership owned and operated? The evidence before us does not show for what purpose the vessels were used or to what extent their use contributed to the partnership income. In these respects, the petitioner has failed to meet the burden of proof. See *Lehman* v. *Tait*, 58 Fed. (2d) 20; *Feeders' Supply Co.* v. *Commissioner*, 31 Fed. (2d) 274; certiorari denied, 279 U. S. 874. The evidence indicates that the partnership employed in its business large sums of money, amounting at times to $300,000 or $400,000, left on deposit with it by other concerns with which it did business. In *Lehman* v. *Tait, supra,* the court expressed the opinion that borrowed money should be considered in determining whether there was more than a nominal capital employed in the business. In *Park Amusement Co.* v. *McCaughn*, 14 Fed. (2d) 553, the court, in considering the identical question here raised, said:

\* \* \* The real criterion is in the fact finding of whether money as an income producer played any real and substantial part in producing the income to be taxed. Each tub must thus stand on its own bottom, and the sole question becomes how the fact stands here.

With respect to the source of the partnership's income for 1917, the respondent's deficiency notice contains the following statement:

1. Careful consideration of all the evidence submitted fails to show " no invested capital " or " not more than a nominal capital " for the year 1917. The partnership was engaged in buying and selling merchandise as principals, made loans, owned stocks, vessels, real estate and operated a hotel and a lumber business. Depreciation was allowed for the year 1917. It is apparent that the partnership had a substantial amount of invested capital. The manner in which it was furnished by the partners does not alter the fact that it existed.

2. From the evidence submitted it is evident that in addition to the commission or brokerage business, the partnership was engaged regularly in the buying and selling of merchandise, lumber business, operating a hotel, owning and operating vessels, investing in stocks and real estate, making loans, in fact was ready to invest in any venture from which a profit could be realized. It is noted that of the total income amounting to $638,750.90 for the year 1917, only $93,542.82, or about 14⅔%, represented commissions.

It is accordingly held that the partnership had invested capital as set forth in office letter dated November 15, 1921, and that all the transactions requiring the use of capital were a part of the regular business of the partnership.

The evidence before us fails to overcome the presumption of correctness attaching to the respondent's determinations, and upon the record the respondent is sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*